# WENDELL *vs.* THE NEW-HAMPSHIRE BANK and a.

In order to make a valid tender for the redemption of a mortgage, after condition broken, the party should make an unconditional offer of the money, and not offer to pay provided the mortgagee will release or reassign. If, after a tender, the mortgagee refuses to execute a release, the statute provides a remedy.

Under the statute of July 3, 1829, relating to the redemption of mortgages, the mortgager, or person having the right of redemption, may request of the mortgagee, or person having his estate, an account of the demands secured by the mortgage, with the damages and costs, and the rents and profits, at any time within one year after possession has been taken for the purpose of foreclosure.

If the mortgagee, upon the request, immediately delivers the account, the right of redemption does not extend beyond the expiration of the year.

If the mortgagee has not an account ready when the request is made, he is entitled to time to prepare it; but, the account having been regularly demanded, the right of redemption continues open until it is furnished.

If an account is delivered within a reasonable time after demand, it is the duty of the mortgager to pay within the year, if the case will admit of it; or if that time has expired before the account is rendered, then, upon the rendition of the account, or within a reasonable time afterwards.

A petition for an account, and for a decree of redemption because the mortgagee has not delivered one, cannot regularly be filed until there has been an unreasonable refusal to furnish an account, unless the account furnished is erroneous.

If a petition is filed where there has been no unreasonable refusal to account, it will notwithstanding be the duty of the mortgager to pay whenever the account is duly rendered; but if it is not rendered in a reasonable time, or if it is not just and true, and the mortgager has proceeded by petition under the statute, the suit having been well instituted, the right of redemption is kept open until the process is terminated.

The provisions of the statute of 1829, so far as they extend, are to be applied in cases arising under the act of July 4, 1834, giving the court general chancery jurisdiction in relation to the redemption and foreclosure of mortgages, but the proceedings may be in the common form of a bill, answer, &c.

Where the mortgagee, or his assignee, has been in possession, for the purpose of foreclosure, one year, according to the terms of the act of 1829, without tender of payment, or demand of an account, the mortgage is foreclosed,

notwithstanding the chancery powers granted by the act of 1834 ; nor can the foreclosure be kept open longer, by a demand of an account and a neglect to render one, under the latter statute, than under the former.

Since the statute of July 3, 1822, providing for the sale of an equity of redemption upon execution, an extent upon the land, subject to the mortgage, is invalid.

Whether a conveyance is a mortgage, or not, is to be determined by the principles which govern courts of law, and not by those adopted in chancery, the statute of 1834 having provided no new rules of construction in this respect.

Where there is a transfer of a chattel interest, by an instrument under seal, purporting to convey an absolute title, and the grantee executes a writing, not under seal, reciting that the conveyance is received as collateral security, and promising to re-convey on the payment of the money within a certain time, the transaction does not constitute a mortgage.—Whether there may be a redemption after the time, upon the ground that the transfer is in the nature of a pledge, *quere?*

Prior to the statute of 1834 relating to mortgages, there was no provision in this state for a redemption of personal property mortgaged, after a forfeiture, and upon non-performance of the condition the property became absolute in the mortgagee.

Where a mortgagee assigned a debt and mortgage, by an instrument under seal, purporting an absolute conveyance, and took from the assignee a writing not under seal, reciting that the assignment was a security for a debt of the mortgagee, and promising, if the debt was paid within a certain time, to reassign, and after the expiration of the time without payment, the assignee brought a writ of entry as on mortgage, against the mortgagee, who was in possession, and obtained judgment for possession unless the debt of the mortgagee secured by the mortgage was paid—*Held*, the judgment remaining in force, that the mortgagee, or a subsequent grantee, could not redeem by a payment of the amount of the debt to secure which the mortgagee assigned the mortgage.

IN CHANCERY. The bill stated that one Abraham Wendell was, on the 25th day of April, A. D., 1828, seized in fee of a certain parcel of land situated in Portsmouth, and on that day conveyed the same to one Dorothy Wendell, upon the condition that if the said Abraham Wendell, his heirs, &c., should pay his promissory note, dated April 26, 1824, for the sum of $2243.19, payable to said Dorothy, in five years, then the deed should be void, otherwise in force —that said Dorothy afterwards, on the 30th of October, 1828, in consideration of the sum of $2850, by an instru-

*Wendell vs. The N. H. Bank.*

Wendell
*vs.*
The N.H.Bank.

ment under seal, set forth at large in the bill, made an assignment of the premises and the debt thereby secured, to the New-Hampshire Bank—that on the same day said Dorothy received from said bank an instrument in writing, signed by the cashier, and recited at large, but which was not under seal, whereby the bank acknowledged the receipt of her promissory note, of that date, for the sum of $2850, payable in three years with interest annually, and the assignment of said mortgage as collateral security, and promised, if she should pay said note, according to the tenor of the same, the bank would reässign the mortgage, and the note therein mentioned, to the said Dorothy, and would not, in case the interest on the first mentioned note was paid annually, commence any action on the mortgage deed, to recover possession of said mortgaged premises, until the expiration of the three years mentioned in the note for the payment of the same.

The bill then stated that the bank caused a suit to be instituted in its corporate name against said Dorothy, for the recovery of the premises, upon a seizin in fee and mortgage, in which suit such proceedings were had that at the January term, A. D., 1835, judgment was rendered against said Dorothy, by default, for the sum of $3715.83, to be paid by her within two months from the 17th day of April, A. D., 1835 ; and if not paid, with interest, the bank was then to have execution for the demanded premises and costs —that said sum was not paid by said Dorothy, according to the terms of the judgment ; and the bank, on the 27th of June, 1835, took out execution for the said demanded premises, and took possession of the same on the 19th day of October, 1835. And that said Haven pretends, that on or about the 18th day of April, A. D., 1836, the bank duly assigned and conveyed to him all their right, title and interest in the premises and the debts secured by the mortgage.

It then stated that said Dorothy, on the 17th of October, 1835, conveyed all her right, title and interest in the premi-

ses to the plaintiff—that said Abraham, by deed dated April 4, 1836, conveyed all his right and interest in the premises to the plaintiff; and that said Dorothy, on the 7th of October, 1836, made a further assurance of the premises to the plaintiff, and confirmed to him all her right and claim to the premises and said deed of mortgage, and authorized him to pay the bank the balance due on her note, or the just claims of the bank on her, and to demand and receive from the bank a re-assignment or conveyance of the premises, and of the mortgage to her, and the debt thereby secured and assigned to said bank.

It then alleged that the defendant, Haven, at the December term of the superior court of judicature, 1835, recovered a judgment against said Abraham Wendell and one Jacob Wendell, upon which execution issued December 6th, 1835, which, on the 5th day of April, 1836, was extended upon the premises, subject to the mortgage of Abraham Wendell to Dorothy Wendell, and the premises were appraised at the sum of $51.79, subject to the mortgage as aforesaid, and set off by metes and bounds, in part satisfaction of the execution and the officer's fees.

It then alleged that said Dorothy regularly paid interest on her note to the bank, nearly as soon as it became due, until the 30th day of May, 1834, and that at that time $100 of the principal was paid, and that the bank, and the defendant Haven have, since the 19th of October, 1835, received for the rents and profits of the premises the sum of $268, and that the plaintiff, on the 18th day of October, 1836, called at the bank and shewed to the defendant Haven, who was cashier, the deeds from said Dorothy and Abraham, of their several interests in the premises, and requested of said Haven, as cashier, to make out and deliver to him an account of the amount due from said Dorothy on her note, with all damages and costs that had been sustained and incurred thereon, stating that he wished to pay the same to the bank, which Haven wholly declined and refused to do—that the plaintiff,

then made the same request of said Haven personally, which he wholly declined and refused to comply with—that the plaintiff then requested said Haven, as cashier of said bank, and personally, to make out and deliver to him an account of the amount due on the note of Abraham Wendell, assigned to the bank, with all the damages, &c., which he refused to do; and that the plaintiff tendered to Haven, as cashier, and personally, the sum of $3255, stating to him that it was to pay the amount due on the note of Dorothy Wendell to the bank, with the costs, if the bank or said Haven would reässign and set over to him the mortgages, which tender was refused; and that the plaintiff, in order that the aforesaid mortgage of said Abraham to Dorothy should not be foreclosed, tendered to said Haven, as cashier, and also to him personally, $4145,—to pay the amount due on the note of Abraham to Dorothy, with the damages and costs, if the bank would reässign and set over said mortgage to him, which was refused; and that he then requested said Haven to make out and deliver to him the amount that he claimed on account of the extent of the execution on the premises, and tendered to him the sum of $75, to discharge his pretended claim on the premises, on account of the extent.

The bill then charged that the defendants absolutely refused to render an account of the amount due on the note of Dorothy Wendell to the bank, or of the just claims of the bank, or said Haven, on said Dorothy, or to accept payment from the plaintiff of the amount justly due and owing by said Dorothy to the bank, or said Haven, and to reässign or convey the premises to the plaintiff—that he had, by the force and effect of the deeds of Dorothy Wendell and Abraham Wendell to him, a good and perfect right to pay the amount due on the note of Dorothy Wendell to the bank, and to demand and receive a reässignment or conveyance to him of the aforesaid mortgages, and the debts thereby secured, and that neither the bank nor Haven have a right to demand and receive from him, as assignee of said Dorothy,

any thing more than the amount justly due on the note of Dorothy Wendell to the bank, after deducting the rents and profits received by the defendants, since the 19th day of October, 1835, for the use of the said premises ; and that Haven had not, by the extent of his execution against the said A. & J. Wendell, acquired any right or interest in the premises, nor any right to redeem the same, or pay the note of Dorothy Wendell to the bank, but that said extent is void in law and of no effect.

The bill then prayed that an account might be taken of the rents and profits, and all other sums which had been received by the defendants towards satisfaction of the note of Dorothy Wendell to the bank, and of the principal and interest which has accrued, due on said note of Dorothy Wendell ; and the plaintiff offered to bring into court and lodge with the clerk, or to pay to the defendants, what should, upon the taking of the aforesaid account, appear to remain due on said note of Dorothy Wendell ; and that the said defendants might be decreed to reässign or convey the premises, and the mortgage of Abraham to Dorothy, and the debt thereby secured, to the plaintiff, &c.

The defendants, in their answer, admitted the execution of the mortgage by Abraham Wendell, and alleged that said Dorothy, on the 28th of October, 1828, in consideration of $2850, paid and advanced to her by the bank, being the full amount of the principal and interest due at the time, on the mortgage, sold and delivered over to the bank, by an absolute and unconditional sale, the note secured thereby, and also transferred the mortgage—that although the negotiations were nominally between the bank and Dorothy Wendell, yet that the business was all transacted with the bank by Abraham Wendell personally, and the papers and writings delivered by him, and that he received the money, as the defendants believed, solely for his own use and accommodation, and so applied it with her consent—that the

payments towards the principal and interest were all made from his funds, and for his own proper debt—that he paid the interest on said sum of $2850, until May 30, 1834, and no longer, with $100 towards the principal—that the bank, for the recovery or foreclosure of the mortgage, instituted a suit against said Dorothy, the tenant in possession, and that possession was delivered on the 19th of October, 1835— that on the same day the premises were leased to the plaintiff, at his request, by the bank—that the bank, until the 18th of April, 1836, and the defendant Haven ever since that time, have remained in possession by their said tenant, who had paid two quarters rent to the bank and one to Haven.

The answer further set forth the recovery of the judgment by Haven against A. & J. Wendell, and that he caused his execution to be extended on the mortgaged premises and all the right of Abraham Wendell therein, being the right of redeeming the same, and caused the same to be set off to him by metes and bounds, and seizin thereof to be delivered, on the 5th of April, 1836, under and by virtue of the statute of July 4, 1829,—and that he purchased and redeemed, and that the bank sold and conveyed to him, all the right and interest of the bank in the mortgage, and in the debt and lease, April 18, 1836, whereby he became seized of all the rights conveyed by the mortgage, and all right of redeeming afterwards remaining in the mortgagee, subject to the full payment of the debts within the time limited by law.

The answer then alleged that the defendants had remained in the peaceable and continued actual possession of the premises for the space of one year and more after entry under the writ of possession, to wit., from the 19th of October, 1835, to the filing of the answer, without any payment or any legal tender having been made.

It further set forth, that said Dorothy, at the time of the deed to the plaintiff, had no title; and admitting that the

cashier, without any express authority from the corporation, gave a written receipt, not under seal, to Abraham W., in the name of said Dorothy, such as is stated in the bill, denied that the conditions mentioned in the receipt had been complied with on her part, and that they could receive such construction as to defeat or limit the rights conveyed by her absolute deed and the endorsement of the note.

The answer admitted that the plaintiff, on the 18th of October, 1836, demanded the accounts, and offered to pay certain sums of money, as alleged in the bill, but denied his right to tender or demand an account or conveyance—or that he did absolutely and unconditionally offer to pay and legally tender any sum of money; and alleged that he never gave the defendants any notice that he wanted or should call for such accounts, and that without notice it was impossible for the defendant Haven to furnish them; but that Haven has always been willing, on reasonable notice, to furnish full accounts of all his claims on the property, to any person authorized to require them, and has since actually furnished them to the plaintiff without such notice; and that he is willing to receive the amount of said debts or any part, and has, since the 18th of October, 1836, repeatedly demanded and offered to receive of the plaintiff any sums pretended to have been tendered, or which he was willing to pay, but the plaintiff refused to pay the same.

And the defendant Haven protesting that all right of the said Abraham, or his assigns, to redeem the premises was foreclosed, offered, on the payment of the sums paid by him to the bank, and of the amount of his judgment against Abraham Wendell, with interest, to release all claims thereon, &c.

A general replication was filed, and evidence taken.

*Bartlett & Emery*, for the plaintiff, cited 2 *N. H. Laws* 163; 1 *do.* 488, 195, *ed of* 1815; 1 *N. H. R.* 41, *Lund* vs.

*Lund ; 2 do. 71, Bickford* vs. *Daniels ; 2 do. 167, Runlet* vs. *Otis ; 2 Story's Eq.* 287 ; *Fonblanque's Eq.* 531 ; 9 *Wend. Rep.* 228, *Roach* vs. *Cosine ; 5 N. H. R.* 420, *Southerin* vs. *Mendum ; 6 N. H. R.* 205, *Bell* vs. *Morse ; 5 Wheat. Rep.* 326, *Mechanics Bank* vs. *The Bank of Columbia ; 5 Cond. Rep.* 467, *Fleckner* vs. *U. S. Bank ; 6 N. H. R.* 158, *Bailey* vs. *Metcalf ; 1 N. H. R.* 332, *Swett* vs. *Horn ; 5 N. H. R.* 252, *Willard* vs. *Harvey ; Co. Lit.* 209, *b ; 1 Johns. Rep.* 110 ; *14 Mass. R.* 101, *Darling* vs. *Chapman ; 1 N. H. Laws* 486 ; *2 Story's Eq.* 299 ; 8 *Wend. Rep.* 841, *Gilchrist* vs. *Cunningham ; 3 Johns. Cases* 311, *Hickock* vs. *Scribner ; ditto* 322, *Johnson* vs.*Hart ; 2 Story's Eq.* 297 ; *Comyn's Rep.* 393, *Harrison* vs. *Hart ; 8 Greenl. Rep.* 387, *Ward* vs. *Otis ; 5 Pick. Rep.* 259, *Saunders* vs. *Frost ; 1 Camp. Rep.* 181, *Spyley* vs. *Hide ; 5 Barn. & Ald.* 630, *Rivers* vs. *Griffiths ; 4 N. H. R.* 402, *Pritchard* vs. *Brown ; ditto* 432, *Kittredge* vs. *Bellows ; 6 N. H. R.* 70, *Rogers* vs. *Edmunds ; 11 Mass. Rep.* 222, *Warren* vs. *Childs ; ditto* 400, *White* vs. *Bond ; 7 Pick. R.* 49, *Carpenter* vs. *Sutton ; 14 do.* 98, *Eaton* vs. *Simonds ; 2 Cowen's Rep.* 324, *Clark* vs. *Henry.*

*T. Farrar,* and *Cutts,* for the defendant, cited *5 Esp. R.* 47, *Glascott* vs. *Day ; Peake's Ca.* 179, *Cole* vs. *Blake ; 12 Mass. Rep.* 450, *Thayer* vs. *Brackett ; 5 N. H. R.* 440, *Sargent* vs. *Graham ; 4 Esp.* 67, *Dickinson* vs. *Shee ; 1 Cranch's Rep.* 330, *Hepburn & Dundas* vs. *Auld ; 3 T.R.* 684, *Douglass* vs. *Patrick ; 1 Peters' C. C. R.* 15, *Blights, Ex'r,* vs. *Ashley ; 5 Dane* 487 ; *1 Wms. Saund.* 33, *n,* 2, *Birks* vs. *Trippett ; 6 N. H. R.* 158 ; *1 N. H. R.* 332 ; *5 N. H. R.* 30, *Gilman* vs. *Hidden ; 4 ditto* 397 ; *ditto* 424 ; *N. H. Laws* 104, 486.

PARKER, C. J.    The statute of July 3, 1829, prescribing the time and mode of redeeming real estate mortgaged, after enacting that lands, &c. conveyed in mortgage may be

redeemed, after condition broken, by payment of the debt or damages, and the costs if any; provides, that if the mortgagee, or person having his estate, shall, after the condition is broken, enter peaceably, either under process of law or without such process; or, being in possession at the time the condition is broken, shall give notice, &c., and shall remain in the peaceable and continued actual possession for the space of one year after such entry or notice—then, unless payment or a legal tender thereof be made within the year, the mortgager, and all claiming under him, shall be forever barred and foreclosed of the right to redeem.—So far as the present case is concerned, this proviso is but the enactment of a preëxisting rule. The plaintiff in this case, however, cannot defeat a foreclosure by reason of any tender alleged in his bill, because the bill itself admits, and the proof shows, that the offers to pay, as set forth in the bill, were conditional, the plaintiff offering to pay if the defendants would reässign and transfer to him. Such conditional tender is not sufficient. 4 *N. H. R.* 40, *Robinson* vs. *Batchelder;* 3 *Pick. R.* 48, *Loring* vs. *Cooke.* The plaintiff, if he intended to rely upon a tender for the redemption of a mortgage after condition broken, should have made an unconditional offer of the money, instead of requiring an assignment. If he was alleging that the terms of the contract had been duly performed on the one side, and seeking a specific performance on the other part, that might have presented a different case. If the money had been tendered within the three years, the plaintiff might, perhaps, have required a reässignment without impairing his tender, the bank having contracted in such case to reässign. 1 *Cranch* 330, *Hepburn* vs. *Auld.*

If the provision of the statute before cited stood alone, it might be necessary for a mortgager, or person having his estate, to pay or tender at his peril the full amount of the debt or damages, &c. within the year. But the second section of the act, which enacts that after payment, or a legal

tender of payment, the mortgage shall be void, and author-
izes the mortgager in such case, if the mortgagee refuses to
execute a release, to sustain a petition, also provides, that if
the mortgagee, &c. shall refuse to make out and deliver to
the mortgager, &c. a just and true account of all his debts
secured by the mortgage, and all damages and costs sustain-
ed and incurred by reason of the non-performance of the
condition of the same, and of all rents and profits by him
received, the mortgager, &c. may apply by petition to the
justices of the superior court, &c. ; and if it shall be found
that the mortgagee, or person having his estate, has unrea-
sonably refused to make out or deliver an account, the court
shall determine the amount justly due, after deducting the
rents and profits received by the mortgagee, &c., and the
amount being brought into court, &c., the court shall decree
that the mortgage be discharged.

The plaintiff alleges such demand and refusal, and relies
upon this latter provision of the statute. This provision
was incorporated into the act, upon the revision of the sta-
tutes in 1829. There has been no suggestion of any objec-
tion, because this part of the statute is a new enactment,
adopted since the mortgage of Abraham Wendell was made
and transferred to the bank ; and we have considered the
case the same as if such had been the rule prior to the exe-
cution of the mortgage. It is evident from this provision
that there may be cases in which, although the mortgagee
has had possession for the space of a year, and there has
been no payment or tender of payment, yet the equity of
redemption remains open. In order to pay, or tender, the
party ought to know what is due ; but in many cases the
mortgager himself may have but imperfect knowledge on
this subject, and the mortgagee, by withholding the informa-
tion, might, if there was no right to demand an account, se-
cure a foreclosure, by a refusal to render one. For this rea-
son the legislature saw fit to provide for a process by which
the estate might be redeemed after a refusal to make out an

account of the sums due, although no tender had been made.
But in making this provision no time has been particu-
larly specified in which this account may be requested, and
we do not see any good ground on which we can construe
the statute so as to limit it to any period within the year in
which payment may be made. Should we say that it must
be within a reasonable time, before the expiration of the
year, it would furnish at best but an uncertain rule. The
provision was intended to give mortgagers the full benefit of
the right to redeem; and the fair inference seems to be that
so long as payment may be made, so long the account of the
sums to be paid may be demanded. There is nothing to
require the mortgager to make the demand before he comes
to pay. It may, then, be required at any time within the
year.

If the circumstances of the case are such that he can do
so, the mortgagee may stand ready to deliver the account
when demanded; and if he does, and renders a true account,
there seems to be nothing in the statute, or in the nature of
the case, which will extend the right of redemption beyond
the year. In many cases, however, it would be difficult,
and in some it would be impracticable, for the mortgagee to
stand ready to render an account, such as is required by the
statute, whenever it should be demanded, and he must
therefore have time to prepare it. 2 *Pick.* 546, *Fay* vs.
*Valentine; ditto* 540, *Willard* vs. *Fiske;* 13 *Pick.* 130,
*Putnam* vs. *Putnam.* The refusal must be an unreasona-
ble refusal. And in the mean time, the account having
been regularly demanded, until it is prepared the equity of
redemption continues open. This is plain from the provis-
ion of the statute that a petition may be presented to this
court for a redemption, when the mortgagee, &c., has unrea-
sonably refused to make out and deliver an account.

Of course no petition should be presented until a reasona-
ble time has been allowed for the mortgagee, &c. to deliver
an account; and if one is delivered in a reasonable time, it

Wendell
*vs.*
The N.H.Bank.

is the duty of the mortgager to pay within the year, if the case will admit of it ; or if that time has expired before the account is rendered, then upon the rendition of the account, or within a reasonable time afterwards.   Perhaps there may be cases in which the mortgager must have time given him in which to make the payment after the account is rendered, as for instance where it is furnished to him when he is absent from home, &c.

It has been argued in this case that the plaintiff is fore-closed, because an account has been rendered since the filing of the bill, and the money has not been paid.   This might depend upon the question whether the bill was rightfully filed.   In order to justify the filing of a petition there must be an unreasonable refusal to make out the account, or the account rendered must be erroneous.   4 *Pick.* 6, *Battle* vs. *Griffin.*   Long neglect may perhaps be conclusive evidence of such refusal.   If there has been no such refusal, the filing of a petition will not relieve the mortgager from the duty of paying whenever the account is duly rendered ; but if the account is not rendered in a reasonable time, or if it is not just and true, so that it is proper for the mortgager to pro-ceed by petition to redeem, and he has proceeded under the statute, the suit being well instituted the party has the right to his day in court, and the foreclosure is kept open until the decree, or termination of the process.   He is not in such case bound to stop his process by reason of an account ren-dered after the proceedings are instituted ; although if the mortgagee should, after process instituted, furnish a true ac-cout, and the mortgager refuse to pay, that might, under some circumstances, furnish a reason, perhaps, for a limita-tion of the costs.

Such seems to us to be the true construction of the statute of 1829, and the only one which can carry all its provisions properly into effect.   And we think this statute, so far as it extends, is to be applied in cases under the general chancery jurisdiction in relation to the foreclosure and redemption of

mortgages, conferred by the statute of July 4, 1834. That
statute enacts that this court shall have chancery powers and jurisdiction in all cases respecting the redemption and foreclosure of mortgages, and that the power and jurisdiction thus vested shall be exercised according to the established principles of chancery, as far as shall be consistent with the laws and constitution of this state. Such general words could hardly be construed as a repeal of the law of 1829, by implication, even if the last clause of the sentence had not been added. That, however, puts it beyond all controversy, and the jurisdiction thus given must be adapted to the statute of 1829, and governed by that statute in its substance, so far as it makes provision.

Where the mortgagee or his assignee has been in possession one year, according to the terms of that act, without tender of payment or demand of an account, the mortgage must be held to be foreclosed, notwithstanding the chancery powers granted by the act of 1834. And where an account has been demanded, and the mortgagee was not ready at the moment to comply, this demand cannot be construed as keeping the foreclosure open longer, under the statute of 1834, than the right to redeem was extended by the provisions of the former statute.

A bill in chancery may be substituted for a petition, by the mortgager, and one may be brought by the mortgagee, to foreclose, without an entry, and may embrace all parties interested, as subsequent incumbrancers, &c., a time may be set for the redemption, and the usual course in courts of chancery may be pursued, so far as the statutes have not provided ; but whenever the act of 1829 is applicable, it must govern the substance, although it may not the form, of the proceedings.

Chancery sometimes considers a conveyance a mortgage, when at law it could not be so considered. 2 *Cowen* 327, 332, *Clark* vs. *Henry ;* 2 *Story's Eq.* 287 ; 9 *Wendell* 227, *Roach* vs. *Cosine.* But the policy of the legislature here

has been otherwise. The statute of July 3, 1829, instead of adopting the chancery principle, provides that no estate in fee simple, &c., " shall be defeated or incumbered by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in the condition of said conveyance, and become part thereof, stating the sum or sums of money to be secured," &c. And the act of 1834, giving chancery powers in relation to the redemption and foreclossure of mortgages, provides for no new mortgage, or any new construction.

We come next to an examination of the titles set up by the parties.

Abraham Wendell mortgaged the premises to Dorothy Wendell. She assigned this mortgage to the N. H. Bank. The defendant Haven levied upon the land as the property of Abraham, and it was set off to him, subject to the mortgage, and he took an assignment from the bank. The plaintiff holds conveyances from Abraham and Dorothy Wendell, and he denies the validity of the levy of Haven ; and contends that the assignment of Dorothy to the bank was in mortgage, and that he has the right to redeem on the payment of the balance of her note to the bank. The defendants, on the other hand, allege that the levy was valid ; that the assignment of Dorothy was not a mortgage but a conveyance upon condition, and that all right of redemption has been barred and foreclosed.

The extent by Haven upon the equity of redemption was invalid, having been made subject to the incumbrance. The mortgage of Abraham Wendell was made April 25, 1828, and the equity of redemption should have been sold under the provisions of the statute of July 3, 1822. 2 *N. H. Rep.* 149, *Coos Bank* vs. *Brooks* ; 4 *N. H. Rep.* 402, *Pritchard* vs. *Brown* ; ante 20, *Kelly* vs. *Burnham* ; 11 *Mass. R.* 226, *Warren* vs. *Childs ;* 16 *Mass.* 400, *White* vs. *Bond ;* 7 *Pick. R.* 49, *Carpenter* vs. *Sutton.*

But the plaintiff is not entitled to redeem by the payment

of the amount of the note of Dorothy Wendell to the bank, and the bill cannot be maintained to enforce such a redemption, for several reasons.

If the assignment of Abraham Wendell's mortgage, by Dorothy, to the bank, was to be regarded as a transfer of an interest in real estate, the authorities show very clearly that it cannot be regarded as a mortgage. The instrument by which the assignment was made is under seal, and purports to be an absolute transfer of the mortgaged premises, the deed of mortgage, and the debt. The instrument executed by the cashier, reciting that the transfer was received as collateral security for her note, and stipulating that the bank would reässign, if she paid her note according to its tenor, although in writing is not under seal, and as a transfer of an interest in real estate the writing could not, for that reason, operate as a defeasance. 2 *N. H. Rep.* 167, *Runlet* vs. *Otis ;* ditto 71, *Bickford* vs. *Daniels ;* 1 *N. H. Rep.* 41, *Lund* vs. *Lund ;* 8 *Green.* 246, *French* vs. *Sturdivant.*

If the assignment to the bank be regarded as a transfer of a chattel interest, the result seems to be the same. It was transferred by an instrument under seal ; and if this was not necessary, still the instrument taken back, not being of as high a nature, is not to be regarded as part of the other, and cannot at law operate as a defeasance ; and it is by the principles which govern courts of law that we must determine whether this is a mortgage. 4 *Mass. Rep.* 443, *Kelleran* vs. *Brown ;* 13 *Mass. R.* 447, *Flint* vs. *Sheldon ;* 14 *Pick.* 479, *Flagg* vs. *Mann ;* 1 *Pick.* 399, *Badlam* vs. *Tucker ;* 1 *Powell on Mortgages,* (*Rand's ed.*) 151, *a. n.* 1; 1 *Co. Rep.* 113, *Albany's Case* ; 2 *Black. Com.* 342.

In *Brown* vs. *Bement,* 8 *Johns. Rep.* 75, (*2d ed.*) it does not appear whether the writing taken back was under seal, nor was that matter adverted to in the opinion.

The instrument gave Dorothy Wendell the right to reclaim the mortgage and note, on the payment of her debt, according to its terms ; and perhaps a right to redeem after the three

years, as in case of a pledge, if no further proceedings had been had; but this is not clear because the legal property was conveyed by the transfer, and the transaction was not therefore technically a pledge. 2 *Caines' Cas. in Error* 202, 210, *Cortelyou* vs. *Lansing.* This case it seems was not determined by the court, (5 *Johns. Rep.* 260) but the opinion has been fully recognized as authority. 10 *Johns.* 474, *McLean* vs. *Walker*; 12 *Johns.* 149, *Garlick* vs. *James.*

If, however, this assignment might be considered as a mortgage of a chattel—and but for the want of a seal to the instrument taken back it might well be so regarded—other difficulties would arise. Prior to the statute of July 4, 1834, before referred to, giving this court general chancery powers in relation to the redemption and foreclosure of mortgages, there was no statute provision here for a redemption of personal property mortgaged, after a forfeiture; and the authorities show that upon the non-performance of the condition the property at law became absolute in the mortgagee. 2 *Caines' Cas. in Error* 202; 2 *Vesey, Jr.* 378, *Jones* vs. *Smith*; 8 *Johns.* 75, *Brown* vs. *Bement*; 7 *Cowen* 292, *Ackley* vs. *Finch*; 9 *Wendell* 80, *Langdon* vs. *Buel*; ditto 258, *Ferguson* vs. *Lee*; 12 *Wendell* 61, *Patchin* vs. *Pierce*; 1 *Pick.* 399; *Story on Bailment* 234, *ch.* 6, *sect.* 345. It was held, in Ferguson *vs.* Lee, that after such non-performance, the property mortgaged might be levied on as the property of the mortgagee.

Courts of chancery having general chancery powers appear to have decreed a redemption. 2 *Story's Equity* 297; 2 *Johns. Ch. Rep.* 62, 100, *Hart* vs. *TenEyck, and cases cited*; 12 *Wendell* 62. But no such chancery powers existed in this state.

There was here, then, when this transfer was made to the bank, and at the expiration of three years afterwards, when the condition, if it might be regarded as one, was broken by the failure of Dorothy Wendell to pay the money, no statute provision authorizing a redemption after forfeiture, nor any

court having power to decree one. By the terms of the contract, and by the principles of law, if the assignment of Abraham Wendell's debt and mortgage was a mortgage of a chattel, it became the absolute property of the bank in October, 1831, long before her conveyance to the plaintiff, there being no right of redemption which could have been enforced after that time. 8 *N. H. R.* 361, *Leighton* vs. *Shapley.*

If there had been no subsequent payment by Dorothy, upon her note to the bank, it would be very clear that the chancery powers conferred by the legislature in 1834 could not authorize us to decree a redemption in such case, although we may, by virtue of that statute, decree a redemption of chattels mortgaged after its passage, if there has been no foreclosure by sale, and the application is made in season. *Auth. ante.*

Whether we can decree such redemption where the mortgage was made before the passage of the law, but the condition was not broken at the time, or whether such a construction of it would not make it a retrospective law, impairing a vested right, we need not now determine. 3 *N. H. R.* 473, *Woart* vs. *Winnick;* 2 *Gallison's R.* 105, *Society, &c.* vs. *Wheeler.*

Had the money been tendered within the time stipulated, we might perhaps have entertained a bill to enforce a specific performance of the contract to re-convey, notwithstanding the power to make such a decree has been conferred since the contract was entered into ; because that would be merely enforcing a right and duty which existed originally by virtue of the contract itself, although there was no process to enforce a specific performance of the duty.

Nor can the payments by Dorothy Wendell after October, 1831, affect the case. In Patchin *vs.* Pierce, 12 Wendell 61, it is held that aceptance of part of the money is not a waiver of the forfeiture. If it were otherwise, no payment was received in this case after the passage of the act of 1834, and there has been, therefore, no admission, since that act, that

the bank held the assignment subject to a redemption; and, moreover, the bank instituted a suit against Dorothy Wendell, who it seems was then tenant in possession, and recovered judgment against her at January term, 1835, as upon a mortgage, the conditional judgment being entered for the amount due on Abraham Wendell's mortgage.

If the assignment might be regarded as a pledge for the payment of Dorothy's debt—which, as before observed, may be questioned, because the instrument by which it was assigned conveyed the general and legal property, and purported to convey it absolutely—the bank, by these proceedings, must be held to have made it their own. They were equivalent to a bill for foreclosure, or notice to redeem and a sale of the pledge. 2 *Johns. Ch. Rep.* 62, 100; *Story on Bailment* 236; 2 *Kent's Com.* 453. They gave the premises to the bank by a judgment at law, unless the bank was paid the amount of Abraham Wendell's mortgage.

If she had a right to redeem, as in case of a pledge, she should have brought the amount of her debt into court, with the costs, and prayed a stay of the further proceedings, or have had the conditional judgment entered for the amount due on her note. The judgment must be regarded as conclusive of the terms on which she had a right to redeem the land from the bank, and of consequence to redeem the transfer of the mortgage.

Under all these circumstances, this bill cannot now be sustained to redeem Abraham Wendell's mortgage from the defendants by the payment of what might be found due on Dorothy Wendell's note, and that puts an end to the plaintiff's case.

Whether the amount paid on Dorothy Wendell's note might be considered a payment of so much of Abraham Wendell's debt, having been paid by him, but, as he says, for her, it is of no consequence to enquire, because this bill is not brought to redeem from the mortgage of Abraham.

There is, to be sure, an allegation that the sum due on his mortgage was tendered, if the defendants would reässign ; and there is an allegation that an account of the amount due on it was demanded ; but there is no offer to redeem that mortgage, and no relief prayed for upon the ground that the plaintiff is desirous so to do. 18 *Johns. R.* 544, 560, 570, *Beekman* vs. *Frost, in Error.*

*Bill dismissed.*