# CHESHIRE,

---

## BUFFUM *vs.* BUFFUM.

Where the condition of a bond was, that if the obligee should pay a sum of money within a year, the obligor should reconvey certain lands; and in a bill in equity, to enforce a re-conveyance, it was alleged that the obligee made a tender on the 14th of April, and within the year; but the evidence showed the tender to have been made on the 8th of April—*Held,* that the allegation that the tender was made within the year, embraced the tender on the 8th, and that the proof was sufficient.

A tender, with a request that a deed should be executed, to which the party is entitled on making the tender, or with a request that the note of the party making it should be given up, is not a conditional tender.

Whether a party who has executed a promissory note for the payment of a sum of money, with interest " within one year," may tender the money before the expiration of the year, *quere.* *It seems,* that upon a contract for the delivery of specific articles within a certain period, performance may be tendered before the expiration of the time.

Where, by the condition of a bond, the obligor is entitled to a re-conveyance of land, if he shall first pay a sum of money, with interest, within a certain time, he may tender the money at any time within the period specified. But if a note is given for the money, payable at the expiration of the time, with interest, and the bond refers to the note, perhaps he should tender the full amount of the interest up to the time when the note would become due.

The tender in such case should be kept in readiness; but a demand of the money, after the filing of a bill for specific performance and an answer denying the right of the plaintiff, cannot avail to defeat the bill, if it appear that the plaintiff is still willing to pay the amount.

The bill should allege that the party is ready to pay the money. But if this is omitted, the court may relieve the plaintiff, by permitting him to bring the money into court.

IN EQUITY. The bill alleged, that on the 15th of April, 1839, the plaintiff, George Buffum, borrowed of the defendant, Esek Buffum, $332·00, and gave his promissory note therefor, payable in one year, with interest; and at the same

time conveyed to the defendant, by an absolute deed, a certain farm lying in Richmond, the only consideration of said conveyance being said sum of money borrowed—that, at the time of making the deed, it was expressly agreed between the parties, that the defendant should hold the land as security for the money, and for no other purpose; and, in pursuance of the agreement, the defendant made and executed a bond to the plaintiff, in the penal sum of $332·00; with a condition, that if the plaintiff should first pay the defendant that sum, with interest, agreeable to his promissory note, then the defendant was to give to the plaintiff, his heirs, &c., a good and sufficient deed of the farm, and the obligation to be void, otherwise of force.

The bill then alleged, that the farm was of the value of $2000—that the plaintiff, to entitle himself to a re-conveyance, did, on the 14th of April, 1840, and within one year from the execution of the bond, tender and offer to pay to the defendant the amount of the note, and interest, being in all $353·00, and requested him to receive the same, and demanded a conveyance of the land, according to the agreement; and had frequently, before and after the tender, applied to the defendant, and requested him to take the money, give up the note, and execute a conveyance of the land. But that the defendant wholly refused to perform his agreement.

The bill prayed a specific performance of the agreement to re-convey.

The defendant, in his answer, stated that he agreed to pay a debt of the plaintiff to Obed Harkness, on condition that the plaintiff would give the defendant a deed of his farm, and that he agreed to execute a bond in the penal sum of the amount of the money, with a condition for a re-conveyance, provided the money was paid, with interest, within one year from the date of the bond—that on the 15th of April, 1839, the agreement was carried into effect, and the writings executed as set forth in the bill, and he denied that

Buffum *v.* Buffum.

there was any other agreement relative to any condition upon which he should hold the farm.

He denied the tender on the 14th of April, as alleged in the bill, but admitted that from one to three weeks previous to the expiration of the year from the date of the bond, the plaintiff came to the defendant's house, and counted out a sum of money, the amount of which he could not state, and requested the defendant to give a deed of the farm, and that he declined to receive the money, or make the deed, as he believed he lawfully might do, for the reason that by the terms of the note and bond, the money was not due. He admitted, also, that on the day previous to the filing of the bill, the plaintiff requested him to go to a Mr. Pickering's, and make out a deed, which was not done, and stated that he had not made a deed, because he was instructed and believed that the plaintiff was not entitled to one.

The evidence taken on the part of the plaintiff proved a tender to the defendant, at his house, on the 8th of April, and a demand of a deed—that the defendant refused to take the money, because it was not then due, and he was then informed that it would again be tendered on the 14th—that a tender was again made at the defendant's house on the 14th, in the presence of his wife, he being absent—and a message was left for him, that it would be placed in the hands of a Mr. Randall. He was requested at other times to take the money.

There was testimony on the part of the defendant, that on the 2d of October, 1840, subsequently to the filing of the bill and answer, he demanded the money of the plaintiff, but it was then in the hands of Randall.

It appeared that on the 5th of October it was again offered to him, but he refused to take it.

*Handerson*, for the plaintiff. The contract was that the money borrowed, with the interest, was to be paid " *within one year.*" So says the bond, and we suppose that were we

in a court of law, the plaintiff might at any time relieve himself from this penalty of the loss of his farm, without waiting to the last day of the year ; and, *a fortiori,* may be in a court of equity. Had this tender not been made till after the expiration of the year, equity would give relief. 1 *Madd. Chanc.* 31.

Much less of formality is required to make a valid tender, where the object is to relieve against a lien or penalty, than where made in discharge of a debt.    *Stark. Ev., Tender, p,* 1396, 1393 ; *Bac. Ab., Tender.*

The bill alleges a tender made the 14th of April, and " within one year from the date of the bond." We suppose a tender on the 8th is as effectual as if made on the 14th, and the time alleged in the bill is wholly immaterial. Proof of a tender on the 8th maintains the allegation of the bill. The material matter is, that a tender was made within the year ; and if made within that time, we are not bound to prove it made on the precise day it is alleged in the bill. This precision is never required in pleading in suits at law. But we say, also, a good tender was made again on the 14th. Every thing was done that the complainant could do.

It is a general rule, even in courts of law, if one desirous of making a tender does all he can to make it, and is prevented by the act of the other party, the tender is nevertheless good. In case of a mortgage, it is enough to save a forfeiture of the estate, if the mortgager go the mortgagee's house with the money, to redeem, and tender it there, although the mortgagee is not there.    *Bac. Abr., Tender.* Personal notice was given to the mortgagee, the 24th of March, that on the 25th of September following, the money would be tendered at *Lincoln's Inn Hall,* and was so tendered, the mortgagee not being present. Held a good tender. *Bac. Abr., Tender.*

The evidence adduced by the defendant, to show that on the 2d of October the money was demanded, but not produced, seems to suppose we had tendered money to pay *the*

*note*, and were bound to have it always ready, and that, not having it ready when demanded, we lost the benefit of our tender. But in answer to this, we say, even in that case we should have a reasonable time after demand, to procure it, when left with a third person, and we did procure it and offer it to the defendant in a reasonable time. But the better answer is, we were not then bound to pay it, as regards this bill. If the mortgager tender the amount due on the mortgage, at the proper time, the land is forever relieved from the mortgage, without having the money always ready afterwards. The debt is not paid, and the mortgagee may sue and collect it, but his hold upon the land is gone.

*Chamberlain, & Bartlett*, argued for the defendant. There is no pretence of any misunderstanding about the contract. The farm was bought, and there was a contract to re-convey. The controversy is, whether a tender was made, so that the party is entitled to a re-conveyance.

The bond is not to re-convey on tender at any time within the year. It is to pay agreeable to the tenor of his promissory note. The defendant was not bound to take the payment until the expiration of the term.

The only question then is, whether, at the time the note became due, there was a tender which the defendant was bound to take. No tender before the 14th of April is stated in the bill. The 15th April was the right day.

But if the 14th was the right day, there was no unconditional tender of the money. It was always made with the condition that the note should be given up, and a conveyance made of the land. The plaintiff had no right to demand the note or conveyance. If he had such right, he should have prepared a deed and tendered that.

The tender has not been kept in readiness, and the plaintiff must fail for that reason.

PARKER, C. J. The money was tendered to the defendant

at his house on the 8th of April, 1840. It has been said that this is not alleged in the bill. But the bill alleges that it was tendered on the 14th, and within one year from the execution of the bond ; and the last allegation embraces the tender on the 8th. The proof therefore is sufficient. *Gree-ley's Eq. Evid.* 2, 161, 169.

There was no condition to this tender. The plaintiff requested a deed, and that the note should be given up. This he might well do. The defendant did not offer to take the money, but said he was not bound to receive it. This must be regarded as an unconditional tender, if the plaintiff had the right to tender at that time. 5 *Pick. R.* 270, *Saunders* vs. *Frost ; Wendell* vs. *New Hampshire Bank,* 9 *N. H. Rep.* 413.

The note has not been put into the case, and its precise terms are not stated. Nor is it important. No case has been cited in the argument, and we have found none giving a construction to a note where the promise is to pay a sum of money " within " a certain time. We are inclined to believe that the maker of such a note may tender the money to the holder at any reasonable time within the period specified, although the holder cannot enforce the payment until the expiration of the time. The time of payment depends entirely upon the agreement of the parties. If the promise was to deliver specific articles, or to perform any other act than the payment of money, " *within* " a certain period, we think the party would have the right to tender the performance at any reasonable period, although the other party could not demand it till the last day ; and no very sound reason occurs to us why the same rule should not apply to a contract to pay money, giving the maker an option to pay if he finds the holder at the place, in case place be specified. It is true, that there is but a slight difference in phraseology between such a note and one payable " *in*" a certain time ; and perhaps commercial usage may have construed the latter as an engagement to pay at the expiration of the period,

so that the party is not at liberty to tender payment before that time.

By the law of this state, grace is allowed on promissory notes. Upon a note payable at one year from date, no suit can be commenced until the expiration of the days of grace. But it is supposed that the maker may tender at the expiration of the year, or at any time within the days of grace. If he may, there is no objection, in point of principle, to a note by which the maker may tender the money before the holder can make a presentment and demand. Clearly the parties may so make their contract. 3 *N. H. Rep.* 333, *Eastman* vs. *Fifield.*

But however this may be, and supposing that the note in this case was payable at the expiration of the year, that will make no difference. The condition of the bond is, that if the obligee, George Buffum, his heirs, &c., " shall first, within one year from the date, pay or cause to be paid" to to the obligor, &c., the sum of $332, and interest, " agreeable to his promissory note of this date," the obligor is to give a deed, &c. If the note was payable at the expiration of the year, this latter clause cannot be restrictive of the former. It could have been intended merely as a reference to the note, to show that it was the same sum of money. It is not to be read, " if the said George shall first, within the year, pay at the expiration of the year."

The condition of the bond, then, is, that if the plaintiff shall pay the money within the year, the defendant shall re-convey the land.

If a promise to pay within a year, in a promissory note, may, by some commercial usage, be construed to be a promise to pay at the expiration of the year, there is no such usage applicable to the condition of an obligation. Where the condition is to do an act within a specified time, the party who is to perform it may save a forfeiture by a performance or tender, at any reasonable time within the period, if the parties meet at the place ; and he need not wait until the ex-

piration of the time limited, within which the act is to be done. *Cro. Eliz.* 73, *Allen* vs. *Andrews ; Ditto* 14, *Hawley* vs. *Simpson ; Co. Litt.* 211, *a. ; Bac. Abr., Conditions, P.* 3 ; 5 *Dane's Abr.* 499, *ch.* 170, *art.* 7. A similar principle applies in a case where the money is payable on a day certain. There the time of demand is said to be such a convenient time before sunset, as that the money may be counted. But if the parties meet together any time in the day, a tender will save the condition. *Co. Litt.* 202, *a. ; 5 Coke* 115, *Wade's Case.*

We are of opinion that the principle is applicable to this case. The plaintiff, by the terms of the bond, had a right to pay the money within the year, and thereby entitle himself to a re-conveyance. And this gave him a right to tender it to the defendant, at his house, at any reasonable time within the year, for that purpose. If the note was not payable until the expiration of the year, the defendant was not bound to receive the money until that period, and in a suit upon it would be entitled to interest until that time ; but a tender before the expiration of the year, if the money was kept in readiness, saved the rights of the plaintiff, and required the defendant to re-convey according to the terms of the bond.

If the note was payable only at the expiration of the year, perhaps a further tender, at the day, might have been necessary, to furnish a defence to an action upon the note itself. It is not necessary to settle how that may be.

There is evidence that the defendant demanded the money subsequent to the tender, and subsequent to the filing of the bill and answer ; but this cannot avail him in the defence of this case. If, subsequent to the tender, and before the filing of the bill, the defendant had demanded the money, and the plaintiff had refused to deliver it, the refusal might have deprived him of the benefit of the tender. But the demand for the money, in this case, was long after these proceedings were commenced ; and the circumstances show very clearly that it was not made with the purpose of taking the money,

and releasing the land. The money was then in the hands of a third person. Within three days it was procured, and offered to the defendant, and he refused it.

The case shows a very gross attempt to defraud the plaintiff out of his farm; and the penal sum of the obligation, which was only the amount of the money loaned, was doubtless inserted with that view, in the first instance. If we could not relieve the plaintiff on this bill, it is by no means clear that we ought not, upon a bill for that purpose, to decree a re-conveyance on the ground of fraud.

The plaintiff has not set forth in his bill, as he should have done, his readiness to pay the money, nor does it appear that he has brought it into court. But no exception has been taken on this point. The evidence shows his readiness to pay, and we can relieve him, in this particular, by permitting him now to bring in the money. 6 *N. H. Rep.* 158, *Bailey* vs. *Metcalf.* When that is done, there must be a decree that the defendant re-convey the land, and pay the costs.